IN THE UNITED STATES COURT OF FEDERAL CLAIMS

No. 05-1060 T

(Honorable Christine O.C. Miller)

JOHN G. BERG,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# MOTION OF THE UNITED STATES TO DISMISS THE COMPLAINT

EILEEN J. O'CONNOR
Assistant Attorney General

DAVID GUSTAFSON
JACOB E. CHRISTENSEN
Attorneys
Justice Department (Tax)
Court of Federal Claims Section
P.O. Box 26
Ben Franklin Post Office
Washington, D.C. 20044
(202) 307-0878
(202) 514-9440 (Facsimile)

# TABLE OF CONTENTS

**Page**

Motion of the United States to dismiss the complaint . . . . . . . . . . . . . . . . . . . . . . . . . . . . 1

Memorandum of the United States in support of its motion to dismiss the complaint . . . 3

Factual Background . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 3

Discussion:

I. The execution of Form 4549 by plaintiff and the IRS agent did not create a binding settlement agreement that plaintiff may enforce . . . . . . . 6

II. This Court lacks jurisdiction over plaintiff's claim because the complaint was filed after the six-year statutory period of limitations provided by 28 U.S.C. § 2501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

A. When the "contract" was executed . . . . . . . . . . . . . . . . . . . . . . . . 9

B. When the IRS informed plaintiff of a balance due . . . . . . . . . . . 11

C. When the IRS rejected plaintiff's offer . . . . . . . . . . . . . . . . . . . . 11

D. When the IRS failed for years to make the refund . . . . . . . . . . . . 12

Conclusion . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 13

Appendix A:

Internal Revenue Code of 1986 (26 U.S.C.) . . . . . . . . . . . . . . . . . . . . . . . . . A-1

28 U.S.C. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-1

Treasury Regulations (26 C.F.R.) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . A-2

**Table of Contents (continued):** **Page**

Appendix B:

Declaration of Jacob E. Christensen . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . B-1

Exhibit 1: Form 4340, Certificate of Assessments and Payments relating to plaintiff's individual federal income tax year of 1986 . . . . . . . . . . . . . . . . . . . . . B-3

Exhibit 2: Form 4340, Certificate of Assessments and Payments relating to plaintiff's individual federal income tax year of 1989 . . . . . . . . . . . . . . . . . . . . . B-8

## TABLE OF AUTHORITIES

**Cases:**

*Alexander Proudfoot Co. v. United States*, 454 F.2d 1379, 1380 (Ct. Cl. 1972) . 8
*Brooks v. United States*, 833 F.2d 1136, 1145 (4th Cir. 1987) . . . . . . . . . . . . . . . 7
*Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564, 1570 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9
*Country Gas Service, Inc. v. United States*, 405 F.2d 147, 149 (1st Cir. 1969) . . 7
*Evans v. Commissioner*, T.C. Memo. 1999-66 . . . . . . . . . . . . . . . . . . . . . . . . . 8
*Flora v. United States*, 362 U.S. 145, 177 (1960) . . . . . . . . . . . . . . . . . . . . . . . . 6
*Frazer v. United States*, 288 F.3d 1347, 1351 (Fed. Cir. 2002) . . . . . . . . . . . . . . 8
*Gerstein v. United States*, 56 Fed. Cl. 630, 633 (2003) . . . . . . . . . . . . . . . 9, 10, 12
*Hagadone v. Commissioner*, T.C. Memo. 1998-352 . . . . . . . . . . . . . . . . . . . . . . 7
*Hamilton v. United States*, 324 F.2d 960, 963 (Ct. Cl. 1963) . . . . . . . . . . . . . . . 7
*Harris v. United States*, 44 Fed. Cl. 678, 683 (1999) . . . . . . . . . . . . . . . . . . . . . 10
*Hart v. United States*, 910 F.2d 815, 818-19 (Fed. Cir. 1990) . . . . . . . . . . . . . . . 8
*Hudock v. Commissioner*, 65 T.C. 351, 362 (1975) . . . . . . . . . . . . . . . . . . . . . . . 7
*Kinsey v. United States*, 852 F.2d 556, 557 n.1 (Fed. Cir. 1988) . . . . . . . . . . . . . 9
*Kretchmar v. United States*, 9 Cl. Ct. 191, 196-97 (1985) . . . . . . . . . . . . . . . . . . 7
*Library of Congress v. Shaw*, 478 U.S. 310 (1986) . . . . . . . . . . . . . . . . . . . . . . . 8
*Marr v. United States*, 106 F. Supp. 204, 208 (Ct. Cl. 1952) . . . . . . . . . . . . . . . 10
*Patton v. United States*, 64 Fed. Cl. 768, 774 (2005) . . . . . . . . . . . . . . . . . . . . . 9
*R.H. Stearns Co. v. United States*, 291 U.S. 54 (1934) . . . . . . . . . . . . . . . . . . . . 9
*Ringgold v. Commissioner*, T.C. Memo. 2003-199 . . . . . . . . . . . . . . . . . . . . . . . . 7
*Sara Lee Corp. v. United States*, 29 Fed. Cl. 330, 332 n.6 (1993) . . . . . . . . . . . . 7
*Schenley Import Corp. v. United States*, 121 F. Supp. 646, 648 (Ct. Cl. 1953) . 10

**Cases (continued):** **Page**

*Shore v. United States*, 9 F.3d 1524 (Fed. Cir. 1993) . . . . . . . . . . . . . . . . . . . . . . 6
*Shumaker v. Commissioner*, 648 F.2d 1198, 1199-1200 (9th Cir. 1981) . . . . . . . 7
*West Publ'g Co. Employees' Preferred Stock Ass'n v. United States*, 198 Ct. Cl. 668 (1972) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 9

**Statutes:**

Internal Revenue Code of 1986 (26 U.S.C.):

§ 6511 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8
§ 7121 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
§ 7122 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
§ 7422 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

28 U.S.C.:

§ 2501 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 8

**Miscellaneous:**

Treasury Regulations (26 C.F.R.):

§ 301.7121-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
§ 301.7122-1 . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
§ 601.202(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7
§ 601.203(b) . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . 7

No. 05–1060 T
Honorable Christine O.C. Miller

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JOHN G. BERG,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

MOTION OF THE UNITED STATES
TO DISMISS THE COMPLAINT

---

The United States, pursuant to RCFC 12(b), hereby moves the Court to dismiss the complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction.

In support of its motion, the United States relies on the complaint, the accompanying memorandum, and defendant’s exhibits attached thereto.

WHEREFORE, the United States prays that its motion to dismiss be granted.

Respectfully submitted,

January 11, 2006
Date

s/Jacob Christensen

JACOB E. CHRISTENSEN
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
Voice: (202) 307-0878
Fax: (202) 514-9440
Email: jacob.e.christensen@usdoj.gov

EILEEN J. O’CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief, Court of Federal Claims Section

Of Counsel

No. 05–1060 T
Honorable Christine O.C. Miller

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JOHN G. BERG,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

---

MEMORANDUM OF THE
UNITED STATES IN SUPPORT
OF ITS MOTION TO DISMISS THE COMPLAINT

---

The United States hereby submits its memorandum in support of its motion to dismiss the complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. Plaintiff fails to show the existence of any contract that would support his contract claim. Moreover, this Court lacks jurisdiction over plaintiff's claim because, even if there were a contract, the complaint was filed after the six-year statutory period of limitations provided by 28 U.S.C. § 2501.

## **FACTUAL BACKGROUND**

Plaintiff's joint federal income tax returns for 1986 and 1989 showed tax liabilities of $179,241 and $24,468 respectively. (*See* Certificates of Assessments and Payments, Exs. 1 and

2, App. B at B-4, B-9.)[1] Plaintiff included no payments toward either liability with the returns. *Id*. Indeed, IRS records reveal that plaintiff never made any payment toward the 1986 liability (*see id.* at B-3–B-6) and that the 1989 liability was credited with payments only after the IRS applied overpayments from later tax years to the 1989 liability and levied on plaintiff's social security payments in early 2004 (*see id.* at B-11, B-13–B-16.)

Between February and April of 1991, the IRS audited plaintiff's 1986 and 1989 tax returns. (*See* Compl. at ¶ 10.) At the conclusion of the audit, the IRS agent prepared a report, Form 4549, Income Tax Examination Changes, to reflect the results of the audit. (*See* Compl. at Ex. 5.) Plaintiff agreed to the report, which was then signed by plaintiff and the agent on April 4, 1991.[2] (*See* Compl. at ¶ 18.) The form reflected that plaintiff had been overassessed taxes for 1986 in the amount of $179,241 and underassessed for 1989 in the amount of $99,559. (*See* Compl. at Ex. 5; *see also* Compl. at ¶¶ 12, 13.) Accordingly, in May 1991 the IRS abated the previously assessed 1986 liability of $179,241 and zeroed out that account. (*See* Ex. 1, App. B at B-5.) Since no payment had been made, no money was refunded to plaintiff or his wife. (*See* Ex. 1, App. B.) The IRS also assessed an additional $99,559 for 1989, leaving due a tax liability of $124,027. (*See* Ex. 2, App. B at B-9.)

---

[1] Certificates of Assessments and Payments are presumptively correct, <u>Rocovich v. United States</u>, 933 F.2d 991, 994 (Fed. Cir. 1991), and are admissible public records. <u>Hughes v. United States</u>, 953 F.2d 531 (9th Cir. 1992).

[2] Line 13 of the form (*see* Compl. at Ex. 5) signed by plaintiff and the agent, indicates an <u>overassessment</u> of $179,241 for 1986. Line 15 shows an <u>overpayment</u> of the same amount. If the Court were to reach the merits of plaintiff's claim, it would find that the amount entered on Line 15 is a mistake, and that the correct amount was zero, as evidenced by plaintiff's inability to produce any canceled check, receipt, or other evidence of payment. See the record in *Berg v. United States*, No. 2:04:cv-03278RB (E.D. Pa., 2005).

The IRS has attempted to collect plaintiff's 1989 tax liability for over fourteen years since the audit in 1991. In 1991 alone, after the audit, the IRS sent plaintiff five statutory notices of a balance due for tax year 1989. (*See* Ex. 2, App. B at B-16.) From 1991 to 1995, the IRS sent five statutory notices of intent to levy. *Id.* at B-17. The IRS even filed federal tax liens on plaintiff's property on three separate occasions: July 1994, June 1995, and January 2004. *Id.* at B-10–B-12. On April 11, 1995, even though there was no dispute pending, plaintiff filed an Offer in Compromise (Form 656) that the IRS promptly rejected that year on August 4. (*See* Compl. at ¶¶ 29, 30; *see also* Ex. 2, App. B at B-11.) In 1999, plaintiff filed another offer in compromise seeking the same relief, which the IRS again rejected. (*See* Compl. at ¶¶ 32–34.) Since 1995, the IRS has sent several additional notices to plaintiff, all to no avail. (*See* Ex. 2, App. B at B-17, B-18.) To collect the 1989 tax liability, the IRS eventually levied plaintiff's social security in early 2004. *Id.* at B-13.

In July 2004, more than thirteen years after the alleged contract, plaintiff filed suit in the United States District Court for the Eastern District of Pennsylvania seeking to enforce its terms. *Berg v. United States*, No. 2:04:cv-03278RB (E.D. Pa., 2005). That case was dismissed for lack of jurisdiction on April 12, 2005, because the relief sought exceeded the $10,000 jurisdictional limit of the federal district courts under 28 U.S.C. § 1346(a)(2). *Id.*

Plaintiff filed this suit on October 3, 2005 seeking essentially the same relief, *i.e.*, to enforce a contract claim against the United States. (*See* Compl. at ¶ 3.) In his complaint, plaintiff claims that the audit report constituted a binding contract between himself and the IRS in which the IRS agreed to pay money to plaintiff in the amount of $179,241 (the amount abated for 1986), plus interest. (*See* Compl. at ¶¶ 13, 14.) Plaintiff claims that the IRS was to credit

this amount to plaintiff's 1989 tax liability, bringing it to zero, and refund the remainder to him. (*See* Compl. at ¶¶ 14, 15.) The United States contests that any contract was ever formed between plaintiff and the IRS, or that the IRS ever agreed to pay plaintiff $179,241.

## DISCUSSION

Plaintiff fails to show the existence of any contract that would support his contract claim. Moreover, this Court lacks jurisdiction over plaintiff's claim because, even if there were a contract, the complaint was filed after the expiration of the six-year statutory period of limitations provided by 28 U.S.C. § 2501.

Before discussing plaintiff's contract claim, and as a preliminary matter, the United States wishes to point out for clarification that this case is not a tax refund suit. (*See* Compl. at ¶ 38.) In his complaint, plaintiff postures his claim as one arising in contract. (*See* Compl. at ¶ 3.) However, had plaintiff instead filed a claim seeking a refund of taxes, a claim for 1986 would not be in order since no payment that could be refunded was ever made for that year. Similarly, were the complaint to be construed as seeking a refund of taxes for tax year 1989, consideration of the claim would be barred by the *Flora* rule, which requires full payment of the tax liability before filing suit. *See Flora v. United States*, 362 U.S. 145, 177 (1960); *Shore v. United States*, 9 F.3d 1524 (Fed. Cir. 1993). Plaintiff has an unpaid liability of $120,876 for 1989. (*See* Ex. 2, App. B at B-19.) Hence, relief under a contract claim is plaintiff's last resort, but it is unavailing.

### I. The execution of Form 4549 by plaintiff and the IRS agent did not create a binding settlement agreement that plaintiff may enforce.

Plaintiff cannot prevail under a contract theory because the execution of Form 4549, Income Tax Examination Changes, is not a binding settlement agreement. The settlement or

final closure of a civil tax dispute with the IRS is a matter controlled by statute. *See* I.R.C. §§ 7121 (closing agreements), 7122 (compromises); *see also* Treas. Reg. §§ 301.7121-1, 601.202(b), 301.7122-1, 601.203(b). These provisions provide the exclusive method for settling civil tax disputes with finality. *E.g.*, *Hamilton v. United States*, 324 F.2d 960, 963 (Ct. Cl. 1963) (holding that compromises must comply with section 7122 to have binding effect); *Hudock v. Commissioner*, 65 T.C. 351, 362 (1975) ("It is well established that the statutory procedure [of section 7121] provides the exclusive method by which a closing agreement may be accorded finality."); *see also Shumaker v. Commissioner*, 648 F.2d 1198, 1199-1200 (9th Cir. 1981); *Brooks v. United States*, 833 F.2d 1136, 1145 (4th Cir. 1987); *Country Gas Service, Inc. v. United States*, 405 F.2d 147, 149 (1st Cir. 1969); *Hagadone v. Commissioner*, T.C. Memo. 1998-352; *Ringgold v. Commissioner*, T.C. Memo. 2003-199.

The regulations provide that Forms 866 and 906 are to be used for closing agreements, Treas. Reg. §§ 301.7121-1, 601.202, and Forms 656 and 433 for compromises, Treas. Reg. § 601.203(b). Some courts also give binding effect to Form 870-AD on a theory of equitable estoppel. *See generally Kretchmar v. United States*, 9 Cl. Ct. 191, 196-97 (1985) (discussing a split in authority concerning the binding effect of Form 870-AD); *see also Sara Lee Corp. v. United States*, 29 Fed. Cl. 330, 332 n.6 (1993).

Unlike the prescribed forms discussed above, Form 4549, Income Tax Examination Changes, that was signed by plaintiff and the agent is not a binding settlement agreement that plaintiff can enforce. In *Hudock v. Commissioner*, 65 T.C. 351 (1975), the Tax Court rejected taxpayers' argument that Form 4549 constituted a binding closing agreement because that form is not prescribed by the regulations, and does not purport to be a closing agreement. 65 T.C. at

363. Form 4549 evidences only the taxpayers' consent to the immediate assessment and collection of a deficiency proposed therein, and states that it is subject to subsequent approval. *Id.* "Section 7121 envisages an agreement knowingly entered into by both parties . . . and Form 4549 does not constitute an agreement by the Secretary to anything, much less a final closing agreement." *Id.*; *see also Evans v. Commissioner*, T.C. Memo. 1999-66. When a liability consented to on a Form 4549 is thereafter assessed, the taxpayer is free to pay the liability, claim a refund, and sue if it is not allowed. Form 4549 does not definitively resolve that liability. Had plaintiff wished to secure a more binding agreement, he should have obtained one through the established avenues. Therefore, plaintiff's claim that Form 4549 created a binding agreement is untenable.

## II. This Court lacks jurisdiction over plaintiff's claim because the complaint was filed after the six-year statutory period of limitations provided by 28 U.S.C. § 2501.

This Court lacks jurisdiction over plaintiff's claim under the statute of limitations prescribed by 28 U.S.C § 2501, which applies to contract claims.[3] That section provides that "[e]very claim of which the United States Court of Federal Claims has jurisdiction shall be barred unless the petition thereon is filed within six years after such claim first accrues." This statute of limitations is jurisdictional in nature and, as an express limitation on the waiver of sovereign immunity, may not be waived. *Hart v. United States*, 910 F.2d 815, 818-19 (Fed. Cir. 1990); *see also Frazer v. United States*, 288 F.3d 1347, 1351 (Fed. Cir. 2002). As such, section 2501 must be strictly construed. *See, e.g.*, *Library of Congress v. Shaw*, 478 U.S. 310 (1986)

[3] A shorter, three-year statute applies to the filing of a tax refund claim. *See* 26 U.S.C. § 6511. A taxpayer who misses this deadline is barred from litigating his claim, unless he can contrive a successful contract claim. *See* 26 U.S.C. § 7422(a); *Alexander Proudfoot Co. v. United States*, 454 F.2d 1379, 1380 (Ct. Cl. 1972).

(holding that statutes waiving sovereign immunity must be strictly construed).

A cause of action accrues when all of the events necessary to fix the alleged liability of a defendant have occurred and the claimant is legally entitled to bring suit. *Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564, 1570 (Fed. Cir. 1993). A claim does not accrue unless the claimant knew or should have known that the claim existed. *Kinsey v. United States*, 852 F.2d 556, 557 n.1 (Fed. Cir. 1988). In applying this standard, the law charges an individual with knowledge "not only of those events whose occurrence was evident for all to see, but also of such events that reasonably attentive concern to one's affairs would bring to light." *Gerstein v. United States*, 56 Fed. Cl. 630, 633 (2003); *see also Patton v. United States,* 64 Fed. Cl. 768, 774 (2005).

The question when plaintiff's supposed cause of action arose is academically interesting, but practically unimportant. By any of the three possible dates, it arose–and the limitations period began running–more than six years before plaintiff filed his lawsuit.

A. <u>When the "contract" was executed</u>. As is shown above (in Part I), there was no contract between plaintiff and the IRS. However, assuming *arguendo* that the April 4, 1991, Form 4549 was a contract, then arguably the cause of action arose on that date, since thereafter plaintiff could supposedly have sued on his alleged contract. A suit on such a contract could be characterized as a claim for an "account stated," which "is based on the common law concept that an implied contract arises when a debtor submits to a creditor a statement of the final balance due on an account and the creditor agrees to accept the proposed balance to close the account." *West Publ'g Co. Employees' Preferred Stock Ass'n v. United States*, 198 Ct. Cl. 668 (1972); *see also R.H. Stearns Co. v. United States*, 291 U.S. 54 (1934). In the tax arena, such a

claim may arise in limited circumstances where the IRS, after having a chance to pass on a taxpayer's claim and making a definite decision in the taxpayer's favor, informs the taxpayer that it intends to issue a refund and thereafter fails to issue such a refund. *Harris v. United States*, 44 Fed. Cl. 678, 683 (1999).

The six-year period of limitations prescribed by section 2501 accrues on a claim for an account stated on the "date of the statement of the account." *See Marr v. United States*, 106 F. Supp. 204, 208 (Ct. Cl. 1952) (Whitaker, J., dissenting) (holding that plaintiff's claim for account stated accrued when the Comptroller General communicated to plaintiff that she was due an amount from the government); *Schenley Import Corp. v. United States*, 121 F. Supp. 646, 648 (Ct. Cl. 1953) (holding that the statute began to run when importers of liquor were notified that they were due a refund from excess deposits made in estimation of their tax on imported liquor). *Cf. Gerstein v. United States*, 56 Fed. Cl. 630, 633 (holding that, at the latest, a claim for account stated accrued when a taxpayer received Form 1099, almost a year after an IRS agent informed the taxpayer that he would receive a refund).

Analogous to a claim for an account stated, plaintiff alleges that the IRS agreed to pay plaintiff $179,241 at the conclusion of an audit, which the IRS failed to do. (*See* Compl. at ¶¶ 10-15, 25.) That audit concluded on April 4, 1991, when plaintiff and the agent signed Form 4549, the execution of which plaintiff argues entitles him to a payment from the IRS. (*See* Compl. at ¶ 17.) Accordingly, April 4, 1991 could be taken as the date of the "statement of account." Therefore, plaintiff's supposed cause of action arguably accrued on that date, and the six-year period of limitations expired on April 4, 1997, eight and a half years before plaintiff filed this suit on October 3, 2005.

B. When the IRS informed plaintiff of a balance due. If plaintiff's claim did not accrue on April 4, 1991, then it accrued no later than May 2, 1991, which is the date plaintiff was issued a notice of balance due for 1989. (*See* Ex. 2, App. B at B-16.) At that time, the audit was completed, and the Form 4549 had been executed, so plaintiff must have known by the IRS's notice of a balance due that the IRS did not intend to apply any credit toward plaintiff's 1989 liability or to send the remaining amount to plaintiff in the form of a cash refund, according to plaintiff's alleged understanding of the terms of the alleged contract. (*See* Compl. at ¶¶ 14, 15, 28.) At that point, all of the events necessary to fix the alleged liability of the IRS under the "contract" had occurred, and plaintiff was legally entitled to bring suit if he had so desired. Notably, the May 2, 1991 notice was not the only one plaintiff received. Plaintiff received similar notices of balance due for 1989 on May 27, 1991; July 1, 1991; August 19, 1991; and September 23, 1991. Additionally, plaintiff received several notices of intent to levy on November 4, 1991; March 30, 1992; October 19, 1992; March 21, 1994; and August 28, 1995. The IRS even filed federal tax liens in July 1994 and June 1995. All of these actions by the IRS–taken more than six years before plaintiff filed suit–gave notice to plaintiff that the IRS was intent on collecting for 1989, thereby entitling plaintiff to bring suit on his alleged contract claim. At the very least, reasonable attentiveness to plaintiff's own affairs at the time he received these notices would have brought to light the IRS's resistance to the claim he is now pressing more than a decade later.

C. When the IRS rejected plaintiff's offer. At the very latest, plaintiff's claim accrued on August 4, 1995, when the IRS rejected plaintiff's first offer in compromise. Plaintiff himself admits that his purpose in filing the offer in compromise in April of 1995 was to "rectify

the IRS's refusal to honor the terms of the settlement." (Compl. at ¶ 29.) Plaintiff surely must have known by August 4, 1995, that the IRS was not complying with plaintiff's understanding of the "contract." As an aside, it is important to note here that plaintiff had no basis for filing an offer in compromise. There was no dispute pending between plaintiff and the IRS at that time or at any other time after completion of the audit in April of 1991. Thus, even construing liberally the accrual date for plaintiff's claim, the six-year period of limitations expired at the latest on August 4, 2001, more than four years before plaintiff filed this suit on October 3, 2005.

D. When the IRS failed for years to make the refund. Even in the absence of any of the foregoing acts by the IRS, the agency's non-act (*i.e.*, its failing to make the refund) put plaintiff on notice that his supposed contract would not be honored. Plaintiff did not act reasonably in waiting for more than a decade to file suit on his claim, and this suit is not timely. In *Gerstein v. United States*, 56 Fed. Cl. 630 (2003), an IRS representative told a taxpayer, in March of 1990, that he would receive a refund check from a previous tax year. 56 Fed. Cl. at 631. In court, the taxpayer claimed that he never received the check. *Id.* at 630. The taxpayer did, however, receive Form 1099-INT in January of 1991, which reflected interest income paid to the taxpayer by the IRS in 1990, and which he reported on his 1990 federal income tax return. *Id.* at 631. Over the next ten years, the taxpayer made periodic inquiries to the IRS concerning his check, but did not initiate any formal action until filing suit in 2001. *Id.* at 631-32. The court found that the taxpayer's receipt of Form 1099-INT was sufficient to put him on notice that something was awry in his tax affairs and held that the statute began to run, at the latest, on the date of its receipt. *Id.* at 633. The court went on to hold, however, that even without imputing knowledge of the information contained in Form 1099-INT, the taxpayer's claim was not timely

and his actions in postponing for over seven years the initiation of any formal action to recover his expected refund were not reasonable. *Id.* at 633-34. "Not having received his refund check more than a year after its payment was expected, plaintiff could have sued then for its recovery. The commencement of suit in this court . . . comes a decade after the claim first accrued and, thus, nearly four years after the expiration of the statute of limitations." *Id.* at 634.

Similarly, even disregarding plaintiff's receipt of notices, federal tax liens, and the IRS's rejection of plaintiff's offer in compromise, plaintiff did not act reasonably in waiting over fourteen years since the audit to commence formal action on his claim. Not having received the refund he was expecting after the audit in 1991, plaintiff could have brought suit many years ago for its recovery. He did not, and is now time-barred.

## CONCLUSION

The Court should enter judgment in favor of the United States dismissing plaintiff's complaint.

Respectfully submitted,

January 11, 2006
Date

s/Jacob Christensen

JACOB E. CHRISTENSEN
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
Voice: (202) 307-0878
Fax: (202) 514-9440
Email: jacob.e.christensen@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief, Court of Federal Claims Section

Of Counsel