No. 05–1060 T
Honorable Christine O.C. Miller

---

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JOHN G. BERG,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

# REPLY BRIEF OF THE UNITED STATES IN SUPPORT OF ITS MOTION TO DISMISS THE COMPLAINT AND REQUEST FOR ORAL ARGUMENT

The United States hereby submits its reply brief in support of its motion to dismiss the complaint for failure to state a claim upon which relief can be granted and for lack of subject matter jurisdiction. The United States requests oral argument on this motion.

## ARGUMENT

### I. The execution of Form 4549 by plaintiff and the IRS agent did not create a binding settlement agreement that plaintiff may enforce.

Plaintiff cannot prevail under a contract theory because the execution of Form 4549, Income Tax Examination Changes, is not a binding settlement agreement. Even assuming the revenue agent or district director had settlement authority, Form 4549 "does not constitute an agreement by the Secretary to anything, much less a final closing agreement." *Hudock v. Commissioner*, 65 T.C. 351, 362-63 (1975); *Holland v. Commissioner*, 70 T.C. 1046, 1048-49

(1978), *aff'd*, 622 F.2d 95 (4th Cir. 1980). Form 4549 merely evidenced plaintiff's consent to the immediate assessment and collection of the deficiency proposed therein, *Hudock*, 65 T.C. at 363, leaving open the prospect of future dispute and litigation of the liability so assessed and collected.[1]

Plaintiff cites several cases for the proposition that the audit report (Form 4549) constitutes a binding contract, governed not by statute, but by general contract law. However, the cited cases applied the principles of contract law to give binding effect to settlement agreements entered into by parties to a law suit. With one exception,[2] the issue in each case cited by plaintiff was the effect or enforceability of a settlement agreement entered into by parties during litigation. *See Buesing v. United States*, 42 Fed. Cl. 679 (1999) (enforcing an agreement made by the IRS during a bankruptcy proceeding to release a lien in exchange for cash); *Estate of Kokernot v. Commissioner*, 112 F.3d 1290 (5th Cir. 1997) (interpreting the terms of a settlement stipulation

---

[1] By signing Form 4549, plaintiff merely "consent[ed] to the immediate assessment and collection of any increase in tax and penalties, and accept[ed] any decrease in tax and penalties shown above." (*See* Form 4549, Compl., Ex. 5.)

[2] In *Goldman v. Commissioner*, 39 F.3d 402 (2d. Cir. 1994), the court gave binding effect to Form 870-AD, but held that a settlement proposal letter sent to the taxpayer by the IRS could not be binding until executed "in a separate closing agreement." *Id.* at 406. This Court has also given binding effect to a properly executed Form 870-AD on the theory of equitable estoppel. *See Kretchmar v. United States*, 9 Cl. Ct. 191, 196-97 (1985). In *Kretchmar*, the court found that, by executing Form 870-AD, the plaintiffs waived their right to further litigation of their claims, and that to allow litigation of those claims after the IRS's opportunity to assess and collect additional tax had expired would significantly prejudice the Government. *Id.* at 198. The court highlighted the express language of Form 870-AD that, once the form is executed, "*the case shall not be reopened* in the absence of" certain enumerated contingencies, and that "*no claim for refund or credit shall be filed or prosecuted for the year(s) stated above other than for* amounts attributed to *carrybacks* provided by law." *Id.* at n.2; *cf. Hudock*, 65 T.C. at 363 (holding that equitable estoppel did not apply to preclude further assessments by the government after the execution of Form 4549 because that act did not establish the requisite substantial change of position by the taxpayer in detrimental reliance on the Government's conduct).

reached while the case was pending before the Tax Court); *Washoe Ranches #1 Ltd. v. Commissioner*, T.C. Memo 1996-495 (interpreting the terms of an agreement purporting to settle all cases involving certain partnerships); *Principal Mut. Life Ins. Co. v. United States*, 29 Fed. Cl. 157 (1993) (enforcing a settlement entered into before the court's final decision was issued, while the case was still pending); *Kurio v. United States*, 429 F.Supp. 42 (S.D. Tex. 1970) (refusing to enforce an alleged settlement agreement entered into while a tax refund suit was pending).

The United States does not contest that general principles of contract law apply to the compromise and settlement of tax cases during litigation.[3] Under 26 C.F.R. § 301.7121-1(d)(1), once a case is docketed in the Tax Court, there is no requirement that a settlement of that case be concluded by way of a section 7121 closing agreement. *Haiduk v. Commissioner*, T.C. Memo. 1990-506; *Treaty Pines Invs. P'ship v. Commissioner*, 967 F.2d 206, 212 (5th Cir. 1992). Likewise, as this Court well knows, the United States settles tax refund litigation by agreements embodied in letters.

Nevertheless, prior to litigation, the settlement or final closure of a civil tax dispute with the IRS is a matter controlled by statute. *See* I.R.C. §§ 7121 (closing agreements), 7122 (compromises); *see also* Treas. Reg. §§ 301.7121-1, 601.202(b), 301.7122-1, 601.203(b). These provisions provide the exclusive method for settling civil tax disputes with finality. *See, e.g.*,

---

[3] General contract principles also apply to compromises, *Robbins Tire Co. v. Commissioner*, 52 T.C. 420, 435-36 (1969), and final closing agreements, *Silverman v. Commissioner*, 105 T.C. 157, 161 (1995), *aff'd*, 86 F.3d 260 (1st Cir. 1996); *Rink v. Commissioner*, 47 F.3d 168, 171 (6th. Cir. 1995); *Smith v. United States*, 850 F.2d 242, 245 (5th Cir. 1988); *Last v. United States*, 37 Fed. Cl. 1, 6-7 (1996), that are executed pursuant to the established statutory provisions. *See* I.R.C. §§ 7121 and 7122.

*Hamilton v. United States*, 324 F.2d 960, 963 (Ct. Cl. 1963) (compromises); *Hudock v. Commissioner*, 65 T.C. 351, 362 (1975) (closing agreements). The very fact that Congress has provided a way in which the IRS may bind itself precludes the possibility of its being bound by some other procedure. *Knapp-Monarch Co. v. Commissioner*, 139 F.2d 863, 864 (8th Cir. 1944). Plaintiff's argument that Form 4549 created a binding agreement is without merit, and he has failed to state a claim upon which relief can be granted.

II. Plaintiff's pursuit of permissive administrative remedies did not operate to toll the statute of limitations.

Plaintiff had no contract conferring on him the right that he claims. Assuming *arguendo* that there was such a contract, plaintiff's pursuit of permissive administrative remedies would not have tolled the statute of limitations provided by 28 U.S.C. § 2501. Under that section, suit must be filed "within six years after such claim first accrues." Since plaintiff filed his lawsuit in October 2005, his cause of action must have first accrued no earlier than October 1999 to be viable. A cause of action accrues when all of the events necessary to fix the alleged liability of a defendant have occurred, and the claimant is legally entitled to bring suit. *Catawba Indian Tribe of South Carolina v. United States*, 982 F.2d 1564, 1570 (Fed. Cir. 1993). Once the United States has met its burden of proof as to the statute of limitations defense, a plaintiff has the burden of proving an exception. *Seldovia Native Ass'n v. United States*, 35 Fed. Cl. 761, 769 (1996), *aff'd*, 144 F.3d 769 (Fed. Cir. 1998).

Plaintiff's contract claim accrued no later than any of four possible dates: (1) April 4, 1991–when the "contract" was executed, (2) May 2, 1991–when the IRS informed plaintiff of a balance due, (3) August 4, 1995–when the IRS rejected plaintiff's first offer in compromise, or

(4) when the IRS failed for years to make the refund. Each event occurred much more than six years before plaintiff filed suit on October 3, 2005.

Plaintiff has not met his burden of proving an exception to the statute of limitations. Plaintiff's argument appears to be that his filing offers in compromise on April 11, 1995 and again on February 26, 1999 (*see* plaintiff's offer, Compl. at Ex. 6) either tolled the statute of limitations or caused his claim to accrue upon the IRS's rejection of the second offer by letter dated July 17, 2002 (*see* rejection letter, Compl. at Ex. 7). Whichever be his argument, it nevertheless fails.

If a dispute is subject to mandatory administrative proceedings, then the claim does not accrue until their conclusion. *Crown Coat Front Co. v. United States*, 386 U.S. 503, 511 (1967); *Nager Elec. Co. v. United States*, 368 F.2d 847, 853 (Ct. Cl. 1966); *Friedman v. United States*, 310 F.2d 381, 385-86 (Ct. Cl. 1962). However, pursuit of permissive administrative remedies does not toll the statute of limitations. *Soriano v. United States*, 352 U.S. 270, 274-75 (1957); *Clyde v. United States*, 80 U.S. 38, 39 (1871); *Lins v. United States*, 688 F.2d 784, 787 (Ct. Cl. 1982); *Camacho v. United States*, 494 F.2d 1363, 1369 (Ct. Cl. 1974); *Friedman v. United States*, 310 F.2d 381, 385-86 (Ct. Cl. 1962). Unless suit is brought under an act or contract requiring a prior administrative determination as a prerequisite to suit, filing a claim with an administrative agency cannot postpone the operation of the statute of limitations. *E.g.*, *Lipp v. United States*, 301 F.2d 674, 674 (Ct. Cl. 1962); *International Potato Corp. v. United States*, 161 F.Supp. 602 (Ct. Cl. 1958).

Plaintiff does not cite any authority to suggest that a contract dispute with the IRS is subject to mandatory administrative proceedings.[4] The filing of an offer in compromise (Form 656), pursuant to I.R.C. § 7122, is not a statutorily mandated administrative proceeding. Filing such an offer is merely an alternative available to a taxpayer who is unable to pay a liability or make other payment arrangements, and is subject to acceptance by the IRS. Ironically, plaintiff waived the routine administrative appeals to which he was entitled: On the Form 4549, on which plaintiff bases his contract claim, plaintiff affirmed by his signature that he did "not wish to exercise [his] appeals rights with the Internal Revenue Service." (*See* Form 4549, Compl., Ex. 5.) Apart from plaintiff's offers in compromise, there is no record of appeal ever being made to the Appeals Office within the IRS. It would be absurd if a claimant could unilaterally and indefinitely toll the statute of limitations–created by Congress for the express purpose of giving repose to the United States against stale claims–by filing a series of settlement offers. None of plaintiff's actions tolled or delayed the accrual of the statute of limitations provided in 28 U.S.C. § 2501, and his claim is too late.

III. <u>The doctrines of collateral estoppel and judicial estoppel do not apply in this case.</u>

The doctrines of collateral estoppel and judicial estoppel do not apply to this case. Plaintiff's argument of collateral estoppel has several fatal problems. First, for collateral estoppel to apply, the previous determination must have been made by a court of competent jurisdiction. *Montana v. United States*, 440 U.S. 147, 153 (1979); *Morgan v. Dept. of Energy*,

---

[4] This is not a tax refund suit; therefore, the mandatory filing of an administrative claim (*see* I.R.C. § 7422(a)) applicable to such suits is not relevant in this case.

424 F.3d 1271, 1274 (Fed. Cir. 2005). The district court in *Berg v. United States*, No. 2:04:cv-0327RB (E.D. Pa., 2005), plaintiff's prior suit, dismissed plaintiff's contract claim precisely because the court lacked jurisdiction under 28 U.S.C. § 1346(a)(2), which gave the court jurisdiction only over claims not exceeding $10,000 that are founded upon any express or implied contract with the United States. (*See* district court's opinion memorandum, Pl.'s Br., Ex. 3.)

Second, a dismissal without prejudice, like the district court's order in this case (*see* Pl.'s Br., Ex. 3), does not operate as a decision on the merits, and thus does not have res judicata effect. *Cooter & Gell v. Hartmarx Corp.*, 496 U.S. 384, 396 (1990); *see also Garden Constr. Co., Inc. v. United States*, 423 F.2d 273, 275 (Ct. Cl. 1970).

Third, collateral estoppel applies only if the issue previously adjudicated is identical to the present issue. *Thomas v. General Services Admin.*, 794 F.2d 661, 664 (Fed. Cir. 1986). The issue before the district court was the procedural question whether the court had jurisdiction over plaintiff's contract claim under 28 U.S.C. § 1346(a)(2), not the merits question whether the execution of Form 4549 constitutes a binding agreement. Accordingly, the district court found that plaintiff's claim was "an action in contract" or "a claim to enforce a contract." (*See* district court's opinion memorandum, Pl.'s Br., Ex. 3.) The court did not reach the merits of that claim to find that there was a contract. Therefore, collateral estoppel does not bar the United States from asserting that no binding agreement exists between plaintiff and the IRS.

Similarly, there are no grounds that justify judicial estoppel in this case. "The doctrine of judicial estoppel is that where a party successfully urges a particular position in a legal

proceeding, it is estopped from taking a contrary position in a subsequent proceeding where its interests have changed." *Data Gen. Corp. v. Johnson*, 78 F.3d 1556, 1565 (Fed. Cir. 1996). Plaintiff argues that the United States, having convinced the district court that it lacked jurisdiction over plaintiff's contract claim, "cannot now reverse course and argue that there was no contract." (Pl.'s Br. at 8.) The United States' litigating position, however, has been consistent, both before the district court and before this Court. In his complaint filed with the district court, plaintiff postured his claim as one arising in contract. (*See* Pl. Br., Ex. 1 at ¶¶ 6-15.) In its answer in the district court, the United States disputed plaintiff's contractual claim. (*See* Pl. Br., Ex. 2 at ¶¶ 9-12.) In its dispositive motion in the district court, the United States argued that, in addition to being time-barred under 28 U.S.C. § 2401, plaintiff's "alleged contract" claim exceeded $10,000 and, therefore, the court lacked jurisdiction to entertain it. (*See* Ex. 1 at 5-6, attached hereto.) That position is consistent with the United States' argument on the merits before this Court that the execution of Form 4549 did not create a binding contract entitling plaintiff to a cash refund. In its dispositive motion, the United States insisted that the only agreement between the parties was as to "audit changes" (*see* Ex. 1 at 9, attached hereto), and that the figure of $179,241 on Form 4549–which plaintiff claims constituted an agreement to pay him that amount–"in no way represent[s] the final liability . . ." (*id.* at 2). The United States characterized plaintiff's position as "a transparent attempt . . . to perpetrate a form of fraud" (*id.* at 3) and called his claims "factually groundless" (*id.* at 4). It was only "[f]or purposes of this motion" that the Government, *arguendo*, did not dispute the existence of a contract. (*Id.* at 5.)

Moreover, the United States disagrees that plaintiff, having sought equitable relief in the district court, is "greatly prejudice[d]" by litigating his claim in this Court. Plaintiff's equitable claim in mandamus was already decided on the merits against plaintiff in the district court. (*See* district court's memorandum opinion, Pl.'s Br. at Ex. 3.) Additionally, any time-bar to plaintiff's claim in this case would also have applied in the district court, because plaintiff's complaint in the district court was not filed until July 12, 2004, after the expiration of the six-year statute of limitations imposed by 28 U.S.C. § 2401.

**CONCLUSION**

The Court should enter judgment in favor of the United States dismissing plaintiff's complaint.

Respectfully submitted,

February 10, 2006
Date

s/Jacob Christensen
JACOB E. CHRISTENSEN
Attorney of Record
U.S. Department of Justice
Tax Division
Court of Federal Claims Section
Post Office Box 26
Ben Franklin Post Office
Washington, D.C. 20044
Voice: (202) 307-0878
Fax: (202) 514-9440
Email: jacob.e.christensen@usdoj.gov

EILEEN J. O'CONNOR
Assistant Attorney General
DAVID GUSTAFSON
Acting Chief, Court of Federal Claims Section

Of Counsel

No. 05–1060 T
Honorable Christine O.C. Miller

IN THE UNITED STATES COURT OF FEDERAL CLAIMS

JOHN G. BERG,

Plaintiff,

v.

THE UNITED STATES,

Defendant.

STATEMENT OF JACOB E. CHRISTENSEN

I, Jacob E. Christensen, pursuant to the provisions of 28 U.S.C. § 1746, state as follows:

1. I am the trial attorney assigned by the Department of Justice to defend the interests of the United States in the case captioned above, and I have possession of the Department's litigation file of *Berg v. United States*, No. 2:04:cv-0327RB (E.D. Pa., 2005), a case filed by plaintiff on July 12, 2004, in the United States District Court for the Eastern District of Pennsylvania.

2. The file contains the following document, that, to the best of my knowledge and belief, is a true and correct copy of what it purports to be (and a copy of which is attached hereto):

| Exhibit | Description |
| --- | --- |
| 1 | Memorandum of the Defendant in Opposition to Motion for Judgment on the Pleadings and in Support of Cross-Motion for Summary Judgment. |

Executed in Washington, D.C. under penalty of perjury on February 10, 2006.

s/Jacob Christensen
Jacob E. Christensen
*Attorney of Record*
*U.S. Department of Justice*
*Tax Division*
*Court of Federal Claims Section*
*Post Office Box 26*
*Ben Franklin Post Office*
*Washington, D.C. 20044*
*Voice: (202) 307-0878*
*Fax: (202) 514-9440*
*Email: jacob.e.christensen@usdoj.gov*

IN THE UNITED STATES DISTRICT COURT FOR THE
EASTERN DISTRICT OF PENNSYLVANIA

| | | |
|---|---|---|
| JOHN G. BERG | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | Civil No. 04-3278 |
| | ) | |
| | ) | |
| JOHN H. SNOW, SECRETARY OF | ) | |
| THE TREASURY, | ) | |
| Defendant. | ) | |

MEMORANDUM OF THE DEFENDANT IN OPPOSITION TO MOTION FOR JUDGMENT ON THE PLEADINGS AND IN SUPPORT OF CROSS-MOTION FOR SUMMARY JUDGMENT

John H. Snow, Secretary of the Treasury, through his undersigned counsel, has opposed the plaintiff's motion for judgment on the pleadings and further moved this Court, pursuant to Rule 56, Federal Rules of Civil Procedure, to enter summary judgment in his favor on the grounds that there are no genuine issues of material fact and defendant is entitled to judgment as a matter of law on the issues presented in this action.

STATEMENT

The relevant facts as are established in the complaint and answer as specified in this memorandum and in the attached Exhibit A to this memorandum, certified copies under seal of Forms 4340, Certificates of Assessments and Payments with respect to plaintiff for the years 1986 through 1989.[1]

---

[1]The Certificates of Assessments and Payments are admissible public records. Hughes v. United States, 953 F.2d 531 (99th Cir. 1992); In re Garm, 114 B.R. 414

The Internal Revenue Service conducted an audit of plaintiff's income tax returns for the years 1986 through 1989 between February and April of 1991. (Comp. and Ans., pars. 5, 6)

Following the audit, the Service prepared a report, Form 4579, Department of the Treasury- Internal Revenue Service Income Tax Examination Changes ("Audit Report) stating the results of the audit. (Comp. and Ans., pars. 12-14; Ex. 1 to Comp.) The report was agreed to by the parties and was executed on April 4, 1991. Essentially, it was agreed that the audit changes were that plaintiff had an overpayment of tax for 1986 in the amount of $179,241, and an underpayment for 1989 in the amount of $99,559. Clearly, this meant that the tax liability of the plaintiff for the year 1986 had to be changed by subtracting $179,241 from the existing liability and the liability for the tax year 1989 had to be changed by adding $99,559 to the liability. The two figures in no way represent the final liability for either of those two years. For that, the parties must turn to Exhibit A to this memorandum, the Form 4340, Certificate of Assessments and Payments for plaintiff for 1986 through 1989 ("Certificate"). The above facts and the Certificate constitute the relevant factual bases for the plaintiff's and the Secretary's motions.

In his memorandum in support of his motion, plaintiff proceeds to make outrageous and unwarranted inferences from the above facts, which inferences do not

---

(Bkrtcy. W.D. Pa. 1990).

constitute a legitimate portion of the undisputed statement of facts. Plaintiff somehow concludes from his inferences and arguments that he was due an actual cash refund of $179,241.20 for the year 1986. In fact, the Certificate establishes that for 1986, plaintiff filed his 1986 income tax return on October 15, 1987, and was assessed $179,241.20 in tax on November 30, 1987. Plaintiff was also assessed a penalty and interest on that same date. On May 20, 1991, immediately after the signing of the Audit Report on April 4, 1991, and in accordance with that Audit Report, plaintiff was credited with the overpayment of $179,241.20. The assessed penalty and interest were also abated on that same date.

The Certificate also demonstrates that plaintiff was assessed the additional $99,559 for the year 1989 on May 20, 1991, in accordance with the Audit Report, and that his final liability was $124,027 for that year. What is particularly noticeable in the Certificate about the transactions for the years 1986 through1989 is that plaintiff never paid any tax for those years, particularly not the original assessments of $179,241.20 or $24,468 for the respective years 1986 and 1989.

Plaintiff then supposedly waited patiently for his alleged "refund" for over thirteen years before filing the present complaint, alleging as his jurisdictional bases 28 U.S.C. § 1361 and 28 U.S.C. § 1651 (mandamus!).

## ARGUMENT

The complaint is a transparent attempt by plaintiff to perpetrate a form of fraud against the United States. Plaintiff has received the benefits of an overpayment of tax

determined by an IRS audit for the year 1986 by virtue of an abatement or credit of that amount of tax for that year. Now, plaintiff is attempting to reap a double benefit by additionally requesting that the same amount already credited to his account be refunded to him in cash. The attempt is to be facilitated by putting blinders on the Court under a contrivance of the parol evidence rule so as to prevent the court from examining the facts and circumstances surrounding the audit, the most glaring fact being that plaintiff never paid the amount he now seeks to be refunded.

In order to effectuate his scheme, plaintiff has brought a mandamus action in equity because the statutes of limitations on tax refund actions and contract actions have long since expired. Despite his wiles, this action is clearly not properly one for mandamus, and as such, it should be dismissed. Moreover, an action on contract, which is precisely what this case represents, is to be brought exclusively in the Court of Federal Claims and this Court has no jurisdiction over the alleged contract dispute. Finally, plaintiff's claims are factually groundless, the Service having already complied with the terms of the audit report in question, as stated above.

A. <u>This Suit Is Clearly an Action on Contract and It Is Time Barred</u>.

Plaintiff has brought this action, alleging jurisdiction pursuant to 28 U.S.C. § 1361, the federal mandamus statute. (Compl. par. 3.) This is clearly a case wherein mandamus will not issue since it is transparently an action on a contract disguised as a mandamus action in order to gain this Court's jurisdiction.

Plaintiff readily admits that this is an action on contract. Plaintiff's arguments in the memorandum in support of his motion for judgment on the pleadings are all couched in terms of contract law. After a brief analysis of the requirements for judgment on the pleadings, plaintiff launches immediately into a discussion of contract law in Section C of the memorandum in which he argues that the Audit Report constitutes a contractual agreement. Plaintiff cites cases decided by the Court of Federal Claims and various circuit courts for the proposition that a settlement agreement between the IRS and a taxpayer is a binding contract. For purposes of this motion, the government does not dispute that a valid contract existed in the form of the Form 4549. It disputes plaintiff's wildly contradictory and inaccurate inferences drawn from the Form 4549 by plaintiff.

In Section D, plaintiff concludes that a valid contract existed, that the IRS breached the contract, and that, therefore, the plaintiff is entitled to judgment on the pleadings. On page 8 of the memorandum, plaintiff makes it clear that the judgment on the pleadings be a money judgment in the amount of $149,733.

Oddly, nowhere in the memorandum is a discussion of mandamus. Clearly, this is an action to enforce a contract or to be awarded money damages on a contract. As such, the action is time barred. As stated above, the audit report was agreed to on April 4, 1991. There is a six year statute of limitations on such suits against the government. 28 U.S.C. § 2401; Saffron v. Department of the Navy, 561 F.2d 938 (D.C. Cir. 1977), cert. denied, 434 U.S. 1033 (1977). This action was filed on July 12, 2004.

Moreover, the Court of Federal Claims has exclusive jurisdiction over any contract claims against the government in excess of $10,000 and this Court would be without jurisdiction to rule on the merits of the contract dispute even if it were not barred. Bonnett Enterprises, Inc. v. United States, 889 F. Supp. 208 (W.D. Pa. 1995); 28 U.S.C. § 1346(a)(2) and 1491(a)(2).[2]

B. This Is Not a Proper Mandamus Action.

In anticipation of plaintiff's forthcoming arguments concerning the efficacy of an actual mandamus action, it is clear that, under the facts and circumstances of the present case, mandamus will not issue. Mandamus is not favored except in extraordinary circumstances. Will v. United States, 389 U.S. 90, 95 (1967). The facts and circumstances in the present case cry out for dismissal or sanctions, not mandamus.

The propriety of entertaining an action for mandamus in the federal system is well defined. First, the petitioner must show a clear right to the relief sought, the respondent must have a clear duty to perform the particular act, and that no other adequate remedy is available. Green v. Heckler, 742 F.2d 237, 241 (5th Cir. 1984). The petitioner must demonstrate that the right to the issuance of the mandamus is clear and

---

[2]Before continuing, it should be made abundantly clear that the government is not using the statute of limitations or jurisdictional arguments to circumvent paying plaintiff his proper refund since plaintiff's contract claim is totally without merit, as will be discussed more completely below.

indisputable. Allied Chemical Corp. v. Daiflon, Inc., 449 U.S. 33, 35 (1980). The plaintiff fails on all counts.

First, plaintiff cannot possibly demonstrate that the right to a refund of tax for the year 1986 is clear and indisputable.[3] As the Certificate for 1986 clearly establishes, plaintiff never paid any tax for the year 1986. The Certificate establishes a *prima facie* case that plaintiff made no payments on the original assessment of $179,241 for the tax year 1986 before or after the Audit Report was completed. Psaty v. United States, 442 F. 2d 1154, 1159 (3d Cir. 1971). It is, therefore, mathematically impossible for him to receive a refund since there are no funds from which the refund could be generated.

Secondly, mandamus will not lie unless the duty of the public official is so clear as to be free of doubt. See, Nova Stylings, Inc. v. Ladd, 695 F. 2d 1179, 1180 (9th Cir. 1983). In the present case, not only does the Secretary have no clear duty to make the refund, it would be illegal to do so. Sec. 6511(b) of the Internal Revenue Code (26 U.S.C. § 6511(b)) plainly provides that there can be no refund of tax unless there has been a payment of tax within the three years prior to the filing of a claim for refund. In the present case, plaintiff paid no tax for 1986 and the law rightly prohibits a refund.

Thirdly, plaintiff had two adequate legal remedies. He could have filed a claim for the refund with the IRS and then filed a tax refund suit pursuant to 26 U.S.C. § 7422.

---

[3]This case should not be confused with the case of First Federal Savings and Loan of Durham v. James Baker, 860 F.2d 135 (4th Cir. 1988) wherein the IRS admitted that petitioner was due a refund but refused to issue the refund on a technicality that was largely the fault of the IRS.

In addition, he could have filed a suit for breach of contract in the Court of Federal Claims. Plaintiff did neither, and the reasons are obvious. He knew he could never prevail in a refund suit because he knew he never paid any tax for 1986. He also knew that the IRS had already fulfilled the terms of the Audit Report by crediting the $179,241 to his account for the year 1986. So his only hope was to wait until he was certain that the IRS files were destroyed ( see, Comp. par. 33), file this suit and try to use some convoluted version of the parol evidence rule to keep out the fact that the IRS already credited the refund amount against the 1986 liability and that he never paid any tax for 1986, making the refund an impossibility.

Under these circumstances, mandamus is out of the question.

C. The IRS Has Performed Its Obligations Under the Audit Report.

It is obvious that plaintiff and his counsel are playing a dangerous game of attempting to file a false claim against the federal government based largely on semantics and an unorthodox reading of the parol evidence rule. The resulting changes in the Audit Report of April 4, 1991, provided that plaintiff had an overpayment due for the year 1986 in the amount of $179,241, and an underpayment due for 1989 in the amount of $99,559. As stated above, the IRS credited plaintiff's 1986 account in the amount of $179,241 on May 20, 1991, and abated any assessed interest or penalty due. The net result was that plaintiff's 1986 liability was reduced to zero. The IRS also assessed the additional $99,559 for 1989. Simply stated, the IRS performed its

end of the bargain and carried out the terms of the audit changes to perfection. There is no cause of action.

Sec. 7422(d) of the Internal Revenue Code (Title 26 U.S.C.) plainly provides that the credit of an overpayment is deemed to be a payment of tax at the time that the credit is allowed. Therefore, the IRS clearly performed on its obligations under the Audit Report by crediting the overpayment shown on the Audit Report changes on May 20, 1991.

Instead of accepting the obvious facts as true, plaintiff attempts to have the Court look at the Audit Report with blinders, alleging that line 15 of the Audit Report did not represent "changes" to be made, but that it represented the final tax liabilities for 1986 and 1989. To accomplish this, plaintiff attempts to exclude the evidence of the IRS's crediting of the overpayment on May 20, 1991, and the evidence that plaintiff, in fact, made no payments against his 1986 tax liability. The government's absolute defense was raised in the Answer (par. 9) and the Certificate was forwarded to plaintiff's counsel with the request that this suit be voluntarily dismissed. Instead, plaintiff presses on with his untenable position.

CONCLUSION

For the above reasons, the plaintiff's motion for judgment on the pleadings should be denied and the government's motion for summary judgment should be granted. The complaint, as far as it is based on contract, should be dismissed with prejudice as untimely and not within the jurisdiction of this Court, and as far as it seeks mandamus against a federal official, dismissed, with prejudice.

Respectfully submitted,

PATRICK L. MEEHAN
United States Attorney

gh 1138

---

GREGORY S. HREBINIAK
Trial Attorney, Tax Division
U.S. Department of Justice
Post Office Box 227
Ben Franklin Station
Washington, D.C. 20044
Telephone: (202) 307-6346