William J. Hughes, Jr., Esquire
COOPER LEVENSON APRIL NIEDELMAN & WAGENHEIM, P.A.
1125 Atlantic Avenue - 3rd Floor
Atlantic City, NJ 08401
(609) 344-3161
File No.: 49297-1
Attorney for Plaintiff

UNITED STATES COURT OF FEDERAL CLAIMS

| | |
|---|---|
| JOHN G. BERG,<br><br>Plaintiff,<br><br>vs.<br><br>UNITED STATES OF AMERICA,<br><br>Defendant. | No. 05-1060T<br><br>**PLAINTIFF'S BRIEF IN SUPPORT OF PLAINTIFF'S MOTION FOR RECONSIDERATION** |

**INTRODUCTORY STATEMENT**

Plaintiff John G. Berg ("Plaintiff") now comes before this Court and moves for reconsideration of this Court's Memorandum Opinion and Order filed April 6, 2006 (collectively the "April 6 Order"), that granted the motion by Defendant, the United States of America (the "Government") to dismiss Plaintiff's Complaint in accordance with RCFC 12(b)(1).

The procedural history and factual background of this case has been set forth in great detail in Plaintiff's Brief in Reply to the Government's Motion to Dismiss, and will not be reiterated in detail herein. Rather, Plaintiff will incorporate by reference the procedural history and factual background set

forth in Plaintiff's Brief as if fully set forth herein, subject to the emphasis provided by the argument below.

Plaintiff now seeks reconsideration of the April 6 Order, specifically this Court's determination that Plaintiff's right to establish and enforce a binding contract with the Government regarding Plaintiff's entitlement to a refund arising from his aggregate tax liabilities and payments for 1986 and 1989 – a contract arising from and documented by an audit conducted in 1991 – is time-barred by the relevant statute of limitations. The application of the time bar precludes Plaintiff from establishing the fact, import and legal consequence of the 1991 agreement even though, as noted by this Court, the Federal District Court in *Berg v. United States*, No. 04-3278, Slip Op. at 3 (E.D.Pa. Apr. 12, 2005) underscored the admission by both Plaintiff **and the Government** that such a contract had been entered:

> **As both parties** admitted to entering into settlement agreement following the 1991 audit, and it is the terms and language of this settlement agreement which formed the basis of the instant dispute, it is the view of this Court that the current matter is properly an action in contract. *Berg v. United States*, *supra*, Slip Op. at 3. (Emphasis provided.)

Under the doctrine of judicial estoppel, this Court has held that the Government is barred from now reversing its position and denying that a contract had been entered in 1991

with Plaintiff. Thus, while application of statutes of limitation will always deny a litigant an opportunity to establish a substantive claim, the result of the April 6 Order is particularly prejudicial and unfair in precluding the establishment of a substantive claim here for which there is no meaningful refutation. Accordingly, if justice and equity are to be served, the grounds for the justification for the April 6 Order require especially close scrutiny.

This scrutiny, in the form of the instant Motion for Reconsideration, is now requested. As argued below, the Government has repeatedly, in separate discrete acts, breached the 1991 contract, and such continuing discrete breaches under well-recognized law defer the running of the controlling statute of limitations so that the current action is entirely timely. For this reason, this Court is respectfully requested to reconsider and reverse its earlier decision.

## LEGAL ARGUMENT

### I. THIS COURT ERRED IN APPLYING THE SIX YEAR STATUTE OF LIMITATIONS FOR CONTRACT ACTIONS WITHOUT CONSIDERING THE CONTINUING SEPARATE VIOLATIONS OF THE CONTRACT BY THE GOVERNMENT.

#### A. THE CONTRACT[1]

As a result of the 1991 audit, the Government's Revenue Agent determined, and Plaintiff agreed, that Plaintiff had

[1] This factual recitation is derived from Plaintiff's initial brief and its factual appendices and an accompanying Certification of Plaintiff John Berg (hereafter, the "Berg Certification").

underpaid his 1989 Federal Income Taxes by $134,058.67. *Hughes Cert.* at Exhibit 1, ¶7; *Hughes Cert.* at Exhibit 2, ¶7. The Revenue Agent, however, further determined, and Plaintiff also agreed, that Plaintiff had been over-assessed in tax year 1986 and had consequently overpaid the sum of $179,241 for that tax year. *Hughes Cert.* at Exhibit 1, ¶8; *Hughes Cert.* at Exhibit 2, ¶8. At the conclusion of the audit, the Revenue Agent prepared a report of his conclusions (the "1991 report"). *Hughes Cert.* at Exhibit 1, ¶12; *Hughes Cert.* at Exhibit 2, ¶12. The 1991 report was signed by the Revenue Agent, the Revenue Agent's supervisor and Plaintiff. *Hughes Cert.* at Exhibit 1, ¶¶13-14; *Hughes Cert.* at Exhibit 2, ¶¶13-14. It is the 1991 report that was deemed a contract by the District Court (per admission by both parties).

On the first page of the 1991 report, Line 15 denotes that Berg had overpaid his 1986 Federal Income Taxes by $179,241. Specifically, on Line 15, the report states: "Balance Due or (Overpayment), not including interest (179,241.00)." On the same page, the 1991 report further stated that, as a result of the audit, the IRS would allow Plaintiff's claim for a refund for tax year 1986:

> ON 12-24-87 YOU FILED CLAIM FORM 1040-X FOR A ***REFUND*** OF $179,241 FOR 1986. ***AS A RESULT OF OUR EXAMINATION, WE HAVE ALLOWED YOUR CLAIM IN FULL.*** HOWEVER OTHER ADJUSTMENTS

> ARE INCLUDED IN THIS REPORT. (Emphasis added.)

On the second page of the 1991 report, the Revenue Agent made findings with respect to tax year 1989. On Line 15, the Revenue Agent indicated that, not including interest, Berg had underpaid his 1989 Federal Income Taxes by approximately $99,559 (the amount was subsequently increased at the District level).

At the bottom of each of pages 1 and 2 of the report, Plaintiff signed the following acknowledgment:

> Consent to Assessment and Collection - I did not wish to exercise my appeal rights with the Internal Revenue Service or to contest in the United States Tax Court the findings in this report. Therefore, I give my consent to the immediate assessment and collection of any increase in tax and penalties, and accept any decrease in tax and penalties shown above, plus interest as provided by law. it is understood that this report is subject to acceptance by the District Director.

One of the adjustments made by the Revenue Agent in the 1991 report concerned Plaintiff's Schedule C losses with respect to the 1987 tax year. Although not directly relevant to the issues in the instant case, the Revenue Agent's explanation as to the reason for this adjustment demonstrates the errors which occurred by the IRS with respect to Plaintiff's tax files. As explained by the Revenue Agent:

> The adjustment is to correct an error which occurred at the Philadelphia Service Center when the return was processed. ***Apparently,***

> ***the net Schedule C loss as reported was not posted.*** . . . The purpose of this adjustment is to make the revenue agent's report agree with the return as it is reflected in the computer. The adjustment has no effect on the return as filed.

The 1991 report also included a calculation of the interest owed on Berg's $179,241 *overpayment*. In clear typeface utilized by the IRS, the 1991 report indicates that an amount of $76,199 was due in interest from the IRS for the period from 1986 through and including the time of May 10, 1991.

**B. BREACHES BY THE GOVERNMENT.**

As noted by this Court, despite the 1991 REPORT, from 1991 to 1995, the IRS sent statutory notices of intent to levy. Since 1995, the IRS has sent several additional notices to Plaintiff. On three occasions – July 1994, June 1995 and January 2004 – the IRS filed Federal Tax Liens. On or about February 2004, the Government took decisive action, levying and seizing "first a portion then the entirety of the cash retirement benefits" due to Plaintiff from the Social Security Administration on or about February 2004. *Berg Cert.* at ¶2. This levy and seizure by the Government continues until the present time and constituted the first actual "cash loss" incurred by Plaintiff on account of the Government's unsupported claim of Federal taxes due for tax year 1989.

Each of the actions by the Government following 1991 constituted a separate breach of the 1991 report. Each was designed to impose a separate, distinctive detriment upon Plaintiff, a design that was not fully effective until the actions of February 2004. Because each of these actions constitute distinct but continuing breaches, the statute of limitations for a contract action does not begin to run until the most recent breach.

**C. THIS COURT ERRED IN FAILING TO CONSIDER THE SIGNIFICANCE OF THE MULTIPLE BREACHES OF CONTRACT BY THE GOVERNMENT AS CONTINUING VIOLATIONS IN DETERMINING WHEN THE STATUTE OF LIMITATIONS WAS ACTIVATED**

As recognized by the District Court and this Court, this is a contract case. In pertinent part, 28 USC § 2501 imposes a six-year statute of limitations on claims of contractual breach against the United States. In the instant matter, the Government has engaged in a pattern of continuing breaches of the 1991 report - deemed a contract by the District Court and this Court - that, under controlling law, has deferred the activation of the relevant statute of limitations until 2004. There is no dispute that a settlement (apart from the admissions of the parties here) as embodied in the 1991 report constitutes an enforceable contract imposing respective obligations:

> A last-chance agreement is a settlement agreement and a settlement agreement is a contract. *Greco v. Department of the Army*, 852 F. 2d 558, 560 (Fed. Cir. 1988).

> Because it is an implied term of every contract that each party will act in good faith towards the other, a party may breach a contract by acting in bad faith. *See Solar Turbines, Inc. v. United States*, 23 Cl. Ct. 142, 155-56 (1991). A party is not limited to proving breach in that manner, however. It may establish breach by proving that the other party failed to comply with a provision of the contract in a way that was material, regardless of the party's motive. *See*, e.g., *Stone Forest Indus., Inc. v. United States*, 973 F. 2d 1548, 1551-53 (Fed. Cir. 1992). *Link v. Department of the Treasury*, 51 F. 3d 1577, 1582 (Fed. Cir. 1995).

Each action of the government cited by this Court constituted an act inconsistent with the terms of the 1991 report. Yet, as established by the Berg Certification, the most material, the most detrimental, was the levy in 2004 upon Plaintiff's entitlement to social security payments. It is this act that should constitute the triggering event for the running of the six-year statute of limitations.

This Court, however, has held that there are three alternative dates that qualify as triggering events – "April 4, 1991, when the audit report was signed; May 2, 1991, when Plaintiff was issued its first notice of balance due for tax year 1989; or August 4, 1995, when the IRS rejected Plaintiff's first offer of compromise." (S.O. 5) The date of the 1991 report, however, could not be deemed the triggering date as no violation, material, theoretical or otherwise, was committed by

the Government, to the contrary. The notice of balance due submitted by the Government on May 2, 1991, while not consistent with the terms of the 1991 report, does not entail any detriment, material or otherwise. So too, the rejection in 1995 of Plaintiff's first offer and compromise did not entail any detriment. Even if the rejection in 1995 is deemed a material detriment, then certainly the acts thereafter, culminating in the levy on Plaintiff's social security payments constituted a continuing pattern of violations, only the last of which was materially, if not critically, prejudicial.

In *Cowell v. Palmer Township*, 263 F. 3d 286, 292 (3d Cir. 2001), the Court held that continuing detrimental acts, even if constituents of a long-term pattern, would defer the running of a statute of limitations:

> The continuing violations doctrine is an "equitable exception to the timely filing requirement." *West v. Philadelphia Elec. Co.*, 45 F. 3d 744, 754 (3d Cir. 1995). Thus, "when a defendant's conduct is part of a continuing practice, an action is timely **so long as the last act evidencing the continuing practice** falls within the limitations; in such instance, the Court will grant relief for the earlier related acts that would other be time barred." *Brenner v. Local 514. United Bd. of Carpenters & Joiners of Am.*, 927 F 2d 1283, 1295 (3d Cir. 1991).

In *Cowell*, the plaintiff contended that the filing of municipal liens was a wrongful act, and although the early

filings (in and of themselves) may have been individually time-barred, their effect was "continuing" and thus the wrong continued until the liens were expunged, thus deferring the running of the statute. The *Cowell* Court disagreed with this proposition, holding that separate **acts** deferred the running of the statute, not a continuing "effect" of earlier acts (the liens in question). *Cowell v. Palmer Township* at 293. In reaching this conclusion, the Court emphasized that "[t]he focus of the continuing violations doctrine is on **affirmative acts** of the defendant." *Id.* citing to *Delaware State College v. Ricks*, 449 U.S. 250, 258, 66 L. Ed. 2d 431, 101 S. Ct. 498 (1980) (Emphasis provided). So too, "[a] continuing violation is occasioned by continual unlawful acts, not continual ill effects from an original violation." *Ocean Acres Ltd. Partnership v. Dare County Bd. of Health*, 707 F. 2d 103, 106 (4 Cir. 1983).

The Government here has repeatedly sought to impose varying detriments upon the Plaintiff, each in breach of the 1991 report. Each constituted a separate **act** (albeit continuing) in breach of the contract. By disregarding the discrete nature of these acts, and thus disallowing the Plaintiff the opportunity to prove and enforce the 1991 contract, this Court allows the Government to continue an indefinite pattern of consistent violation of a contract that has been deemed uncontested. The aggregate result will be an established right deprived of a

remedy. This anomalous result not only is incompatible with any fundamental notion of justice or equity, but was clearly the pattern of conduct that the Continuous Violation Doctrine was intended to prevent or remedy.

## CONCLUSION

As noted, this is a contract case. In deciding that the statute of limitations in this case was activated in either 1991 or 1995, the Court disregarded every act thereafter by the Government that was either intended to or did materially burden the Plaintiff contrary to the dictates of the 1991 report. To limit the activating dates to either 1991 or 1995 is to guarantee a continuing pattern of violations of a contract that the District Court (as acknowledged by this Court) deemed to have been stipulated. This can be avoided by a reconsideration of the Court's April 6 Order which will eventuate in allowing the Plaintiff an opportunity to establish his contractual rights and the detriment that has been occasioned by the Government's acts. Substantive counter-arguments can then be entertained and a substantive result, predicated on the merits – the preferred disposition by our courts – will resolve the dispute between the Plaintiff and the Government.

COOPER LEVENSON APRIL NIEDELMAN &
WAGENHEIM, P.A.

By: /s/William J. Hughes, Jr.

DATED: May 11, 2006

William J. Hughes, Jr.
Attorneys for Plaintiff,
John G. Berg